UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:

EXCELIUM MANAGEMENT, LLC,

Debtor.

Chapter 11

Case No. 16-21608 (JKO)

**MOTION FOR RELIEF FROM AUTOMATIC STAY TO SATISFY SECURED
LOAN OF BANK OF AMERICA, N.A. WITH PLEDGED COLLATERAL**

Bank of America N.A./Merrill Lynch, Pierce, Fenner & Smith Inc. (the "**Bank**"), hereby submits this motion (the "**Motion**") for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and/or (2) (the "**Bankruptcy Code**") and Fed. R. Bankr. P. 4001 to permit the Bank to repay an "on demand" loan with cash collateral pledged by the above-referenced debtor (the "**Debtor**") to and in possession of the Bank.

**Jurisdiction and Venue**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief requested in this Motion are Bankruptcy Code section 362(d)(1) and/or (2).

**Background**

3. On or about January 29, 2015, the Debtor as borrower, and the Bank as lender, entered into a Loan Management Account agreement (the "**LMA**"), pursuant to which the Bank

made advances or loans upon request to the Debtor.[1] Copies of the LMA account application, pledge and acknowledgement, and standard terms and conditions are annexed together as Composite Exhibit B.

4. The acknowledgement, executed January 28, 2015 (the "**Pledge Agreement**"), provides that Debtor pledges its securities account, number xxxx2832,[2] as security ("**Collateral**") for the loan. *See* Pledge Agreement, Sections II, III and IV. Also annexed, as Composite Exhibit C, are amendments to the LMA approving increases in authorized borrowings to $1.3 Million.

5. Pursuant to the LMA (¶5), the loans are payable *on demand* regardless of whether there is a default and for any reason or no reason.

6. Annexed hereto as Composite Exhibit D, are Bank statements for April-May, June, and July 2016 for account number xxxx2832, which state on their face that the account is "Pledged to ML Lender", i.e. the Bank. Also annexed as Composite Exhibit E are Bank statements for the same period for account number xxxx2836, the LMA account, that reflect the borrowings and payments.

7. The Pledge Agreement, LMA terms, and Bank statements confirm that the Bank has a first priority security interest and lien on the accounts.

8. On or about August 24, 2016, the Debtor commenced this case by filing a voluntary petition for relief under Bankruptcy Code.

---

[1] The Debtor and borrower are one and the same entity although the addresses of the entities are different. The Petition shows the above-captioned Debtor with an address at 1000 Corporate Drive, Ft. Lauderdale, Florida, and a managing member named Sushma Chhabra. The borrower has an address in the loan documents at 13120 SW 107th, Miami, Florida, and a manager named Diane Sugimoto who signed on behalf of the company. Both entities have the identical tax ID number: 47-2212154 on the loan documents and the Petition, and the Limited Liability Company report filed April 29, 2016, annexed hereto as Exhibit A, shows the Ft. Lauderdale address in the Petition with Ms. Sugimoto as the Registered Agent and authorized signatory.

[2] All references to Bank account numbers have been redacted in the text and in each of the exhibits.

9. The outstanding balance of the loan as of August 26, 2016 is $1,199,506, plus per diem interest, legal fees and costs (the "**Loan Amount**"). The value of the Collateral as of August 26, 2016 is $1,236,178 and is declining weekly as the Collateral has been subject to a margin call on a weekly basis. Therefore, it is imperative that the Bank move quickly to liquidate.

10. Attached hereto as Exhibit G is the Affidavit of Bank of America, N.A. in Support of its Motion for Relief Automatic Stay to Satisfy Secured Loan of Bank of America, N.A. with Pledged Collateral.

**Relief Requested and Basis Therefor**

11. The Bank is authorized under 11 U.S.C. § 555 to liquidate the Collateral, however, the Bank requests the entry of a comfort order, substantially in the form attached hereto as Exhibit H, for relief under Bankruptcy Code section 555, and either section 362(d)(1), or section 362(d)(2).

**A.    The Bank is Entitled to Liquidate and Setoff Its Debt**

12. Under section 555:

> The exercise of a contractual right of a stockbroker, financial institution . . . to cause the liquidation, termination, or acceleration of a securities contract, as defined in section 741 of this title[3], because of a condition of the kind specified in section 365(e)(1) of this title shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court or administrative agency in any proceeding under this title . . . .

11 U.S.C. § 555.

13. The purpose of this section was to address the risk of high volatility of securities, which are dependent on market fluctuations. *See* Charles W. Mooney, Jr., *The Bankruptcy Code's Safe Harbors for Settlement Payments and Securities Contracts: When Is Safe Too Safe?*, 49 TEX. INT'L L.J. 243, 246 n.14 (2014) ("[S]ince the bankrupt is unlikely to be able to pay these

---

[3] 11 U.S.C. §741 defines securities contract to include "any margin loan", which is undefined in the Bankruptcy Code, but is generally understood in the securities industry to mean a loan for any purpose secured by securities.

-3-

losses, other carrying brokers must pay them. This is unfair . . . and it could even be dangerous, by placing the other carrying brokers and the clearing organizations in financial jeopardy.").

14. Furthermore, here the situation is dire since the Collateral is subject to margin calls. The Bank receives weekly calls for the account that require immediate payment unless the securities agreements are terminated and the contracts are liquidated. *See* Exhibit F for the recent list of margin calls.[4]

### B.    The Stay Should be Modified "For Cause"

15. Pursuant to Bankruptcy Code section 362(d)(1), the Court may terminate, annul, modify or condition the automatic stay "for cause, including the lack of adequate protection of an interest in property" of the party seeking relief. "Cause" is not defined in the Bankruptcy Code, but is determined based on "the totality of the circumstances in each particular case." *In re Bryan Road*, LLC, 382 B.R. 844, 854 (Bankr. S.D. Fla. 2008). In determining whether "cause" exists, the court "must balance the potential hardship that will be incurred by a moving party if the automatic stay is not lifted, against the potential prejudice to the debtor and the debtor's estate." *In re Gulfstream Crane, LLC*, 2010 Bankr. LEXIS 5665, at *4 (Bankr. S.D. Fla. Mar. 4, 2010). One basis for cause for relief from the automatic stay "may be found upon a showing that the bankruptcy debtor is not making the payments due on secured property as they become due." *Peoples Bank of Lyons v. Williamson (In re Williamson)*, 2009 Bankr. LEXIS 5571, at *4 (Bankr. S.D. Ga. Mar. 16, 2009) (citing *Bargas v. Rice (In re Rice)*, 82 B.R. 623, 627 (Bankr. S.D. Ga. 1987). Once the movant shows that cause exists, the burden is on the debtor to prove that it is entitled to the protection of the automatic stay on all issues other than debtor's equity in the property. *In re Brown*, 290 B.R. 415, 423 (Bankr. M.D. Fla. 2003).

---

[4] Margin calls will continue to deplete the Collateral and the Bank's small cushion and reduce any balance remaining that may otherwise be paid to creditors.

16. Importantly, the LMA is payable on demand and the Bank's equity cushion continues to erode, and with the addition of interest, legal fees and costs, will erode shortly.

17. Generally speaking, when deciding whether to modify the automatic stay, courts consider the balance of the hardship to the creditor against the potential prejudice to the debtor, the debtor's estate, and other creditors. *Saber Sec. & Investigations, LLC v. Raines (In re Raines)*, 2014 Bankr. LEXIS 4756, at *9 (S.D. Ga. Bankr. Nov. 17, 2014) (citing *In re Sonnax Indus.,* 907 F.2d 1280 (2d Cir. 1990) (listing 12 factors to consider when determining whether to modify stay to allow litigation to continue in another forum, including the "impact of the stay on the parties and the balance of harms"). Eliminating the continued incurrence of interest, fees and costs and freeing up cash in an otherwise pledged account for the benefit of the estate (to the extent any funds remain), is in the best interests of creditors.

C.  **The Debtor Does Not Have Equity in the Collateral**

18. As set forth in Bankruptcy Code section 362(d)(2), the Court shall grant relief from the automatic stay --

> with respect to a stay of an act against property under subsection (a) of this section, if –
>
>  (A) the debtor does not have any equity in such property; and
>
>  (B) such property is not necessary to an effective reorganization . . . .

19. Here, the Debtor has no equity in that portion of the Collateral necessary to satisfy the Loan Amount. The Debtor filed schedules on September 16 [DN 11], which do not refer to the Loan Amount or the Collateral, but do refer to a completely different account at the Bank with $1.2 Million; therefore, it is unclear whether the Debtor deems the Collateral to be part of its estate since the Collateral has been pledged to the Bank.

20. As of the filing of this Motion, the Bank's counsel has communicated with Debtor's counsel who has promised to review the matter with his client.

### Conclusion

WHEREFORE, for the foregoing reasons, the Bank respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit H, (i) modifying the automatic stay to permit Bank to liquidate the stocks held as Collateral; and (ii) granting such other and further relief as many be just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on this 20th day of September, 2016 to all parties registered to receive notice via this Court's CM/ECF notification system.

Date: September 20, 2016

Respectfully submitted,

GRAYROBINSON, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131
Leyza.Blanco@gray-robinson.com
Telephone:    (305) 416-6880
Facsimile:     (305) 416-6887

By:    /s/ Leyza F. Blanco
      Leyza F. Blanco
      Florida Bar No.: 104639

AND

By:    /s/ Carren Shulman
      Carren Shulman
      Sheppard Mullin Richter & Hampton LLP  cshulman@sheppardmullin.com
      30 Rockefeller Plaza
      New York, New York 10112-0015
      Telephone: 212-653-8700
      Facsimile: 212-653-8701

*Counsel for Bank of America N.A./Merrill Lynch, Pierce, Fenner & Smith Inc.*