**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | ) Case No.: 16-21608-BKC-JKO |
| | ) Chapter 11 |
| Excelium Management, LLC, | ) |
| Debtor. | ) **Chapter 11 Disclosure Statement** |
| | ) |

Excelium Management, LLC, the above-captioned Debtor, hereby files and proposes its Chapter 11 Disclosure Statement in the Form and Content set forth herein.

Paul DeCailly
*Attorney for Debtor*
Fla. Bar No. 0796301
DECAILLY LAW GROUP, P.A.
PO Box 490
Indian Rocks Beach, FL 33785
(727) 824-7709
Fax : (866) 906-5977
pdecailly@dlg4me.com

## **TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................................................... 3
    A. PURPOSE OF DISCLOSURE STATEMENT........................................................................... 3
    B. SOURCE OF INFORMATION ............................................................................................. 3
    C. MANNER OF VOTING ON THE PLAN................................................................................. 4
    D. HEARING ON CONFIRMATION OF THE PLAN .................................................................... 4
    E. ACCEPTANCE REQUIRED TO CONFIRM PLAN. .................................................................. 4
**ARTICLE I**..................................................................................................................................... 5
**DEFINITIONS** ............................................................................................................................... 5
**ARTICLE II** ................................................................................................................................... 5
**PRELIMINARY STATEMENT OF HISTORY AND FINACIAL CONDITION OF DEBTOR** .............. 5
    A. BACKGROUND ............................................................................................................... 5
    B. COMMENCEMENT OF CHAPTER 11 CASE ........................................................................ 6
    C. PENDING LITIGATION..................................................................................................... 7
    D. SUMMARY OF PLAN OF LIQUIDATION. (*CONSULT PLAN FOR FULL DETAILS*). ..................... 7
        1.    In General................................................................................................................ 7
        2.    Property to be distributed......................................................................................... 7
        3.    Classifications and Treatment of Claims and Interests............................................ 8
        4.    Executory Contracts ................................................................................................ 8
        5.    Anticipated Means of Execution of Plan ................................................................. 9
    E. HISTORICAL DATA AND FUTURE PROJECTIONS .......................................... **Error! Bookmark not defined.**
**ARTICLE III** ................................................................................................................................ 10
**DEBTOR'S OPERATION AND STRUCTURE**................................................................................ 10
    A.   SYNOPSIS OF OPERATION IN CHAPTER 11 ..................................................................... 10
    B.   OBJECTIONS TO CLAIMS ............................................................................................... 10
    C.   MEMBERS .................................................................................................................... 10
**ARTICLE IV**................................................................................................................................ 10
**TAX IMPLICATIONS OF THE PLAN** ........................................................................................... 10
**ARTICLE V** ................................................................................................................................. 11
**ANALYSIS OF THE PLAN VS. CHAPTER 7 LIQUIDATION** ......................................................... 11
**ARTICLE VI**................................................................................................................................ 12
**RISK ANALYSIS** ......................................................................................................................... 12
**ARTICLE VII** .............................................................................................................................. 12
**POST-CONFIRMATION DEBTOR'S STRUCURE**.......................................................................... 12
    A.   EQUITY STRUCTURE ..................................................................................................... 12
    B.   MANAGING MEMBERS .................................................................................................. 12
    C.   RETENTION OF ASSETS AND OPERATIONS .................................................................... 12
**ARTICLE VIII**............................................................................................................................. 13
**UTILIZATION OF CRAM DOWN**................................................................................................. 13
**ARTICLE IX** ............................................................................................................................... 13
**MISCELLANEOUS PROVISIONS**................................................................................................. 13
**ARTICLE X** ................................................................................................................................ 14
**CONCLUSION** ............................................................................................................................ 14

# INTRODUCTION

A. PURPOSE OF DISCLOSURE STATEMENT

Excelium Management, LLC, the above captioned Debtor and Debtor-in-Possession (herein the "Debtor"), provides this disclosure Statement (the "Disclosure Statement") to all of the known creditors and parties in interest in order to disclose that information deemed by the Debtors to be necessary to arrive at a reasonably informed decision in exercising a right to vote for acceptance or rejection of the Plan of Liquidation dated October 7, 2016 (the "Plan").  This Disclosure Statement is intended to enable the Debtors' creditors to make an informed decision in voting to accept or reject the plan.  For the reasons set forth more fully herein, the Debtor hereby recommends and solicits acceptance of its proposed plan by all persons entitled to vote on the Plan.

B.  SOURCE OF INFORMATION

The Source of the information contained within this Disclosure Statement is derived from the Debtors' books and records, historical data, and financial projections prepared by the Debtor. The information contained herein has not been subjected to a certified audit.  The records kept by the Debtor are dependant upon accounting performed by the Debtor. Although the Debtor has made great effort be accurate, because a current audit does not exist, the Debtor is unable to warrant or represent that the information contained herein is without any inaccuracies or omissions.  Other than those set forth in this statement, the Debtor has not authorized any representations concerning the Debtor. In arriving at your decision, you should not rely on any representations or inducements made to secure your acceptance other than those which are contained in this statement. Any such additional representations and inducements should be

reported to Counsel for the Debtors who, in turn shall deliver such information to the Bankruptcy Court.

### C. MANNER OF VOTING ON THE PLAN

All creditors entitled to vote on the Plan may cast their vote for or against the Plan by COMPLETING, SIGNING, DATING, AND MAILING THE BALLOT accompanying this Disclosure Statement to the CLERK OF THE COURT, UNITED STATES BANKRUPTCY COURT, 299 EAST BROWARD BOULEVARD, ROOM 112, FORT LAUDERDALE, FL 33301, ON OR BEFORE THE TIME STATED THEREON.

A copy of the ballot should be mailed to Debtor's counsel Paul DeCailly, at PO Box 490, Indian Rocks Beach, FL 33785

### D. HEARING ON CONFIRMATION OF THE PLAN

By separate order, the United States Bankruptcy Court of the Southern District of Florida, Fort Lauderdale, shall schedule the hearing on the confirmation of the plan. Each party-in-interest will receive, either with this Disclosure Statement or under separate cover, the Bankruptcy Court's notice of hearing on Confirmation of the Plan.  Attendance is not mandatory, but creditors are invited to attend the Confirmation Hearing on the Plan and voice their opinions for or against any objections filed with regard to Confirmation of the Plan.

### E. ACCEPTANCE REQUIRED TO CONFIRM PLAN

As a creditor, your acceptance is important.  In order for the plan to be deemed accepted, the ballots must be tabulated.  Of the ballots cast, more than one-half (1/2) in number of votes

must be for the Plan. In addition, of the ballots cast, the favorable majority must also represent two-thirds (2/3) of the dollar amounts of all votes cast.

Furthermore, unless there is unanimous acceptance of the plan by a class that is deemed impaired under the plan, the Bankruptcy Court must also determine that, under the plan, members of such class will receive, as of the effective date of the plan, property of a value that is not less than the amount that such class of Creditors would receive or retain should the Debtor liquidate under Chapter 7 of the Bankruptcy Code on the effective date of the Plan.

## ARTICLE I

## DEFINITIONS

The definitions set forth in Article I of the plan are incorporated herein.

## ARTICLE II
### PRELIMINARY STATEMENT OF HISTORY AND FINACIAL CONDITION OF DEBTOR

**A. BACKGROUND**

The Debtor, Excelium Management, LLC, was a shared services call center that was formed by its members with the purpose to utilize economies of scale to build and provide call center services for several sister companies including Law Firm Headquarters LLC, CareHQ, Inc., FidelityRX LLC, and Online Education Ventures LLC.  The Debtor and its sister companies are all owned by Excelium Holdings, LLC, and were formed in 2014.  The Debtor was formed as the successor to PRGI, Inc. ("PRGI").  When the Debtor and its sister companies were formed, they obtained space in a Class A office building in north Fort Lauderdale, Florida through a multi-year lease from Radice III, LLC ("Radice").  The Debtor and its sister companies leased the fifth and sixth floor of the building, and the Debtor placed approximately $1.2 Million in an

investment account with Bank of America Merrill Lynch to induce it to issue a letter of credit for the benefit of Radice to insure the faithful payment of the rent payments under the lease.

The Debtor began a downturn in 2016, when Law Firm Headquarters LLC was not able to pay the Debtor for ongoing services. The Excelium model of shared services had proven a failure. In April 2016, the Debtor defaulted on its lease. After multiple forbearances, the Debtor was unable to reach agreement with Radice. On August 8, 2016, PRGI filed a case under the Bankruptcy Code. The Debtor and its sister companies continued to attempt to reach an accord with Radice, including trying to procure a replacement tenant or tenants for the space. Radice rejected the tenants' efforts to advertise the space, telling the tenants' real estate broker to cease and desist advertising. The owner of several rental commercial properties, Radice did not want the tenants to direct prospective other tenants to take over their space; rather, Radice wanted to direct prospective tenants to Radice's other vacant spaces while Radice pursued the $1.2 Million letter of credit and threatened to seek judgments against the other tenants.

### B. COMMENCEMENT OF CHAPTER 11 CASE

On August 24, 2016, the Debtor learned that Radice attempted to call on the $1.2 Million letter of credit. In an effort to preserve the funds in its account with Bank of America Merrill Lynch, and any claims against Radice, on August 24, 2016, the Debtor filed for Chapter 11 Bankruptcy protection in the Southern District of Florida, Fort Lauderdale Division. The case was assigned to the Honorable John K. Olson.

Upon the commencement of the case, the Debtor became a "Debtor-in-Possession" and continues to have possession of the $1.2 Million bank account, and other assets in the form of unliquidated claims against Radice. On September 22, 2016, the United States Trustee filed a

motion to dismiss or convert on the basis of late filings.  On September 27, 2016, a hearing was held on the Trustee's motion.  Although no testimony was adduced, the Court determined that a Chapter 11 Trustee should be appointed.

### C. PENDING LITIGATION

Prior to the filing of the Chapter 11 Bankruptcy, the Debtor was involved in the following litigation:  On April 28, 2016, Radice III, LLC filed an eviction action against the Debtor and five co-tenants including 3RX Consulting LLC, CareHQ Inc., Law Firm Headquarters, LLC, Online Education Ventures, LLC, and PRGI Inc.

### D. SUMMARY OF PLAN OF LIQUIDATION. (*CONSULT PLAN FOR FULL DETAILS*).

*1. In General*

Among other things, the plan provides for the classification and treatment of properly and timely claims filed against the Debtors; the funding mechanism for the Plan; provisions governing distribution under the plan; provisions for the treatment of executory contracts and unexpired leases; provisions for the treatment of disputed claims; conditions to, and effects of plan confirmation; and provisions regarding the Bankruptcy Court's jurisdiction after the effective date.

**2. Property to be distributed**

The Debtor's assets include accounts receivable, some nominal personal property (computer equipment), and most significantly claims against Bank of America Merrill Lynch on the $1.2 Million deposited at Bank of America Merrill Lynch, and claims against Radice III, LLC relating to the $1.2 Million that Radice received from Bank of America Merrill Lynch.

3. **Classifications and Treatment of Claims and Interests**

**Unclassified Claims:**

Administrative Claims are unimpaired under the plan. The Debtor shall pay the allowed claims of the following administrative claims as set forth below:

Any administrative claim allowed under Section 503 of the Bankruptcy Code, upon appropriate application and as granted by the Court, the Debtor shall pay in full and in cash within thirty (30) days of the effective date of the plan or as otherwise agreed between the claimant and Debtor.

(a) **Class I Super-Priority Claims:** Mrs. Sugimoto has agreed to subordinate her super-priority claim, such that priority claims are to be paid first from the proceeds of her post-petition financing. Class I Super-Priority Claims are to be paid following payment in full of Class II Priority Claims, from the proceeds from property sale and/or award from litigation.

(b) **Class II Priority Claims**: Priority claims are to be paid 100% of their allowed claims.

(c) **Class III General Unsecured Creditors**: General Unsecured Creditors shall receive distribution in the following manner and conditions: If gross proceeds from property sale and/or award from litigation are more than $225,000 plus the amount of any administrative claims, then the Class III General Unsecured Creditors shall receive the first $350,000.

(d) **Class IV Claims of Radice III LLC and Bank of America, N.A.**: The unsecured claims of Radice III LLC and Bank of America, N.A. ("Litigated Claims") shall receive distribution in the following manner and conditions: If the award or settlement amount from the litigation to be filed against Radice to recover the approximately $1.2 Million paid to Radice does not exceed Radice's unsecured claim, and/or if the award or settlement amount from the litigation to be filed against Bank of America to recover the

approximately $1.2 Million held in an account at Bank of America does not exceed Bank of America's unsecured claim, any amount remaining after administrative claims and Classes I through III are paid in full shall be paid to satisfy the net amounts due to Radice and Bank of America.

(e) **Class V Claim of Excelium Holdings LLC** ("Equity"):  Equity shall receive a distribution of any funds remaining available from gross proceeds from property sale and/or award from litigation after Classes I through IV are paid in full.

4. **Executory Contracts**

Any and all Executory Contracts and unexpired leases of the Debtors not expressly assumed herein, assumed prior to the Confirmation Date, or not at the Confirmation Date the subject of pending application to assume, shall be deemed to be rejected.

Any claims for rejected contracts shall be paid in Class 2 upon determination by agreement or by the Court.

5. **Anticipated Means of Execution of Plan**

The cash disbursements required to be made under this plan will be made first from funds provided by Diane Sugimoto, who has agreed to provide post-petition financing in the amount of $225,000.  Mrs. Sugimoto is a certified public accountant, and a former manager of the Debtor.  Further, disbursements will be made from funds derived from the sale of the property and from the resolution of litigation against Bank of America Merrill Lynch and Radice III, LLC.  This would provide for disbursement to the remaining creditors all net proceeds from the sale of the property.

# ARTICLE III

## DEBTOR'S OPERATION AND STRUCTURE

### A. SYNOPSIS OF OPERATION IN CHAPTER 11

Immediately prior to the Chapter 11 proceeding, the Debtor's clients have terminated the Debtor's services, and the Debtor has ceased operations. The Debtor has not had any revenue or expenses since the petition. Debtor's counsel, attorney Paul DeCailly, has agreed to pursue the claims against Radice III, LLC and Bank of America Merrill Lynch on contingency, so the pursuit of these claims will not have any cost to the estate.

### B. OBJECTIONS TO CLAIMS

Pursuant to the plan, the Debtor may object to any scheduled claim or proof of claim filed against the Debtor. Such an objection shall preclude to the consideration of any claim as allowed for the purposes of timely distribution in accordance with the plan. Debtor is also investigating whether there are any preferential or otherwise voidable transfers which will provide additional funds for distribution.

### C. MEMBERS

Post-Confirmation, the liquidating Debtor shall continue to be owned by Excelium Holdings LLC.

# ARTICLE IV

## TAX IMPLICATIONS OF THE PLAN

The Debtor believes that confirmation of the plan will not have any adverse tax implications for the estate. The Debtor strongly urges that each creditor consult with their own tax advisor regarding the federal, state, local, and other tax consequences which the implementation of the plan will have on them.

# ARTICLE V

## ANALYSIS OF THE PLAN VS. CHAPTER 7 LIQUIDATION

All payments as provided for in the Debtor's plan shall be financed by the sale of the subject property and any proceeds derived from the pending litigation.

The Debtors have filed its monthly operating statement since the filing of the bankruptcy petition and attached hereto marked as *Exhibit 8* is a table showing all of the claims of the Debtor in each classification.

Management believes that its plan to provide full value for all claims of creditors is in the best interest of the creditors.

In the event of liquidation under Chapter 7 the following is likely to occur:

(a) An additional tier of administrative expenses entitled to priority over unsecured claims and under section 507(a)(1) of the Bankruptcy Code would be incurred. Such administrative expenses would include trustee's commissions and fees to the trustee's accountant, attorneys and other professionals likely to be retained by him/her for the purposes of liquidating the assets of the Debtor.

(b) It is unlikely that a Chapter 7 trustee could obtain the superpriority loan negotiated with Mrs. Sugimoto or the services of Mr. DeCailly on contingency. There exists no advantage to justify the additional administrative expenses by appointing a Chapter 7 trustee.

Predicated upon the foregoing, it is Management's opinion that the liquidation value of the Debtor would be insufficient to make payments to any class of creditor, leaving little or no money available for claims of the other classes of creditors such as general unsecured creditors.

## ARTICLE VI

## RISK ANALYSIS

As in most Chapter 11 Plans of either reorganization or liquidation, there is a risk that the Debtor will not be able to make payments as proposed under the plan due to the speculative nature of the funding mechanism. This Plan depends on the outcome of litigation in both the Bankruptcy Court and the State Court. A negative result in one Court does not necessarily mean that the Creditors will not receive distribution under the plan, but a negative finding by both Courts against the Debtor will result in no net distribution to the unsecured creditors under the plan or by a Chapter 7 Trustee.

## ARTICLE VII

## POST-CONFIRMATION DEBTOR'S STRUCURE

A.  **EQUITY STRUCTURE**

Upon the effective date, the Debtor shall continue to operate, and to do so to wind up its affairs.

B.  **MEMBERS**

Upon the effective date, the Debtor's Sole Member shall remain unchanged as Excelium Holdings, LLC.

C.  **RETENTION OF ASSETS AND OPERATIONS**

Upon the effective date, the Debtor shall retain all its assets. Upon the effective date, the Debtor shall be free to operate and to perform any and all tasks authorized by its articles of organization without further order from this Court.

## ARTICLE VIII

## UTILIZATION OF CRAM DOWN

If all of the applicable provisions of 11 U.S.C. §1129(a) other than paragraph (8), are found to have been met with respect to the Plan, the Debtors may seek confirmation pursuant to 11 U.S.C. §1129(b).  For the purposes of seeking confirmation under the cram-down provisions of the Code, should that alternative means of confirmation prove to be necessary, Debtor reserves the right to modify or vary the treatment of the claims of the rejecting classes so as to comply with Section 1129(b) of the Code.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

Notwithstanding any other provisions of the plan, any claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in whole or in part on or before the date for distribution on account of such claims shall not be paid in accordance with the provisions of this plan until such claim has become an allowed claim by final order.  If allowed, the claim shall be paid on the same terms as if there had been no dispute.

Anytime before the confirmation date, the Debtor may modify the plan, but may not modify the plan so that the plan, as modified, fails to meet the requirements of § 1122 and § 1123 of the Bankruptcy Code.  After Debtor files a modification with the Bankruptcy Court, the modified plan shall become the amended plan.

At any time after the confirmation date, and before a substantial consumption of the plan, the Debtors may modify the plan with permission of the Court so that the plan, as modified,

meets the requirements of section 1122 and section 1123 of the bankruptcy code.  The plan, as modified under this paragraph, shall become the amended plan.

After the confirmation date, the Debtor may, with approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the plan or in the order of confirmation, in such manner as it may be necessary to carry out the purpose and effect of the plan.

## ARTICLE X

## CONCLUSION

Under the plan, creditors and equity security holders of Debtor will participate in some manner in the distribution to be made thereunder.  The Debtor believes that the distributions contemplated in its plan are fair and afford all claimants and interested holders equitable treatment. *Accordingly, the Debtor urges each creditor to support the Plan by returning a ballot accepting the plan.*

Dated: October 7, 2016

/s/ Sushma Chhabra
Excelium Management, LLC - Debtor
By: Sushma Chhabra
Sole Manager

/s/ Paul DeCailly
Paul DeCailly
*Attorney for Debtor*
Fla. Bar No. 0796301
DECAILLY LAW GROUP, P.A.
PO Box 490
Indian Rocks Beach, FL 33785
(727) 824-7709
Fax : (866) 906-5977
pdecailly@dlg4me.com